## Johnson v. Delaware County

*Greer & Johnson*, for plaintiff.
*Albert J. Williams*, for defendant.

MACDADE, J., May 19, 1938.—This is a case stated to determine the validity of the requirement for the payment of a fee of $20 upon the filing of a nomination petition by a person seeking election to the office of auditor of a borough, contained in section 913 of the Pennsyl-

vania Election Code of June 3, 1937, P. L. 1333, 25 PS §2873.

A. Sidney Johnson, Jr., plaintiff, filed his petition for nomination for the office of auditor of the Borough of Swarthmore, Delaware County, Pa., on July 24, 1937. At the time of filing, and as a condition precedent, he was required by the county commissioners as the County Board of Election of Delaware County to pay to the county treasurer the sum of $20 as a filing fee required by the provisions of the Pennsylvania Election Code of 1937. The payment was made under protest, in writing, a copy of which is contained in the case stated. This case stated was filed to obtain an adjudication by the court of the validity of the requirement of a $20 fee for filing a nomination petition for the office of auditor of a borough, and the case stated, after a recital of the agreed facts, concludes as follows:

"If the court shall be of the opinion that, under the Act of June 3, 1937, P. L. 1333, art. IX, sec. 913, 25 PS §2873, and under the Constitutions of the Commonwealth of Pennsylvania and of the United States of America as amended, the said filing fee of $20 was lawfully required to be paid by plaintiff, then judgment shall be entered in favor of the County of Delaware, defendant; if the court shall be of the opinion that the said filing fee of $20 was not lawfully required to be paid by plaintiff, then judgment shall be entered in favor of plaintiff, A. Sidney Johnson, Jr., and against defendant, the County of Delaware, in the sum of $20."

### Discussion

Filing fees, which are new in Pennsylvania, are required by subdivision (b) of section 913 of the Pennsylvania Election Code, which for convenience follows:

"(b) Each person filing any nomination petition shall pay, for each petition, at the time of said filing, a filing fee to be determined as follows, and no nomination petition shall be accepted or filed, unless and until such filing

fee is paid by a certified check or money order only. Said certified checks or money orders shall be made payable to the Commonwealth of Pennsylvania or to the county, as the case may be, and shall be transmitted to the State Treasurer or to the county treasurer, and shall become part of the General Fund:

"1. If for the office of President of United States, or for any public office to be filled by the electors of the State at large, the sum of fifty dollars ($50.00).

"2. If for the office of Representative in Congress, or judge of a court of record, excepting judges to be voted for by the electors of the State at large, and associate judge, the sum of thirty-five dollars ($35.00).

"3. If for the offices of senator or representative in the General Assembly, or for any office to be filled by the electors of an entire county or city, the sum of twenty-five dollars ($25.00).

"4. If for the office of associate judge or for any borough, town, township, school district or poor district office, not otherwise provided for, the sum of twenty dollars ($20.00).

"Provided, however, that no filing fee shall be paid for a nomination petition for any public office for which no compensation is provided by law.

"5. If for judge or inspector of election or for any other public office not included hereinabove, the sum of fifty cents (.50).

"6. If for the office of delegate or alternate delegate to National party convention, or member of National committee or member of State committee, the sum of ten dollars ($10.00).

"7. If for any other party office, the sum of fifty cents (.50).

"8. If for the office of alderman, justice of the peace or constable, the sum of two dollars ($2.00).

"9. If for the office of township auditor or road supervisor, the sum of one dollar ($1.00)."

Inasmuch as borough auditors are not specifically provided for, they are covered by paragraph 4 of the above section in the wording "any borough, town, township, school district or poor district office, not otherwise provided for, the sum of twenty dollars ($20.00)."

By reference to The General Borough Act of May 4, 1927, P. L. 519, art. X, sec. 1047, 53 PS §12993, as amended by the Act of May 8, 1929, P. L. 1635, 53 PS §12993, section 2 thereof, we find that:

"Each auditor shall receive five dollars per day for each day necessarily employed in the discharge of his duties, to be paid by the borough."

The General Borough Act, therefore, seems to provide for payment for services of a borough auditor, and it is called neither salary, compensation or emolument. We are rather inclined to believe that the payment of five dollars per day for each day necessarily employed in the discharge of his duties was intended as emolument, for an auditor is a public officer within the meaning of article III, sec. 13, of the Pennsylvania Constitution of 1874, and a public officer's pay is referred to therein as salary or emolument. Certainly the payment of an auditor is not salary but an emolument, which latter includes "compensation" as in the sense referred to in the Pennsylvania Election Code where it says "that no filing fee shall be paid for a nomination petition for any public office for which no compensation is provided by law." Lexicographers say that "emolument" is the remuneration connected with any office, occupation, or service, whether as salary, fee, or perquisite; compensation": Funk & Wagnall's New Standard Dictionary. So we hold that compensation means the same as emolument, being remuneration connected with the public office of auditor for services, whether as salary, fee or perquisite. The two are synonymous terms. Therefore, compensation is the same as emolument within the meaning of article III, sec. 13,

of the Constitution of 1874. See Conner v. Lawrence County et al., 31 D. & C. 415.

The fee per diem paid an auditor for his services as such is an emolument; and if an emolument then by parity of reasoning, as aforesaid, it is compensation as contemplated by The General Borough Act: Conner v. Lawrence County et al., supra.

As was said in the latter case (p. 420):

"The question might be raised whether the fee allowed a constable by the Act of 1919 for his services at an election is 'salary' or an 'emolument'. It is clearly not salary and, in our opinion, just as clearly is an emolument. It does not depend upon the whim of any person; it depends only upon the will of the legislature as expressed in the statute, and the act of the constable in performing the services: Rupert et al. v. Chester County, 2 Dist. R. 688."

Defendant, by its learned solicitor, who has been quite helpful to us in furnishing a paper book replete with common sense and free from legal niceties and subterfuges, claims that such legislation was intended to discourage the indiscriminate filing of nomination petitions, claiming that experience has shown that unless there is some way of discouraging or stopping the indiscriminate filing of such petitions "there is danger of so many being filed as to prevent the use of voting machines."

While this may be true as a factual situation yet this is not sound logic in reasoning—for the legislature may correct this condition by returning, for example, to the vest pocket balloting.

The regulation of elections is altogether a legislative function. As said in Wilson v. Philadelphia et al., 319 Pa. 47, 49:

"At the most plaintiff's arguments raise some doubt as to the wisdom of this legislation, but no sufficient legal reason is advanced for striking it down. 'The power to regulate elections is legislative, and has always been ex-

ercised by the law-making branch of the government. Error of judgment in the execution of the legislative power, or mistaken views as to the policy of the law, or the wisdom of the regulations, do not furnish grounds for declaring an election law invalid unless there is a plain violation of some constitutional requirement': Winston v. Moore, 244 Pa. 447, 454."

The Constitution of Pennsylvania, art. I, sec. 5, does not guarantee to the people anything with respect to elections except that:

"Elections shall be free and equal; and no power, civil or military, shall at any time interfere to prevent the free exercise of the right of suffrage."

It has been held in Keane v. Lawrence, Secy. of Com., 30 D. & C. 235, on the general question of the payment of fees upon filing nomination proceedings, that:

"The provision that elections shall be free does not mean that they shall be absolutely without expense to the candidate. Freedom in that sense means the freedom to exercise the right of suffrage. It cannot be said, even if the freedom of elections means freedom from unjust imposition and restrictions, that a reasonable regulation involving the exaction of filing fees would interfere with constitutional freedom. Under this statute there is no discrimination. Every intending candidate, regardless of whatever party he may represent, must pay the same fees. Therefore, the statute cannot be said to be discriminatory, and for the same reason it cannot be said to be unequal.

"The only other inquiry is as to whether it is against public policy. If the fees are so large as to show that they are arbitrary and unreasonable and have no proper relation to either the regulation or expense of elections, they might be said to be both unconstitutional and against public policy. The cases are not altogether in harmony on this subject: 'Elections,' 20 C. J. sec. 114, notes 30 and 31.

"The cases sustaining the right to impose filing fees are illustrated by Socialist Party et al. v. Uhl et al., 155

Cal. 776, 789, 103 Pac. 181, 187. The statute under review in this case required fees for all nominees, State, district, county and municipal, ranging from $50 for a State office to $10 for a county or municipal office. It was insisted that the provision was in conflict with the Constitution, which prescribed that no property qualification should ever be required of any person to vote or hold office. The court said:

" 'But we are satisfied that the weight of authority is against the position of petitioner. The constitutional provision under which the primary law was passed gives the legislature the right to fix the conditions upon which participation in a primary election may be had. Under this grant of power it has the right to determine what are reasonable regulations under which the right to participate in the primary may be exercised. It is not claimed that the fees are unreasonable, but the right to exact them at all is questioned . . . such a provision is a reasonable restriction and provides an orderly and systematic method by which the people may select their candidates for public office. The exaction of a fee tends to prevent an indiscriminate scramble for office, where it is fixed at an amount that will impose no hardship upon any person for whom there should be any desire to vote as a nominee for any office, and yet enough to prevent the wholesale filing of petitions for nominations of any one regardless of whether or not he is a desirable candidate. It is but a reasonable means adopted by the legislature to regulate primary elections for the selection of candidates for public office. And the constitutional provision that no property qualification shall be required of any person to vote or hold office is not violated by such provision as to the payment of a fee, but is a reasonable regulation prescribed by the legislature on the wise assumption that any candidate who is of sufficient worth to stand before the people as a candidate for public office and whose can-

didacy calls for the payment of the fee required by the act will be at no difficulty to pay the required amount.'"

While we are not subscribing to or fully sanctioning the above opinion, if we were to pass upon the facts as related therein, yet from the viewpoint we presently have we think such a filing fee ($20), exacted from a candidate for borough auditor when he files his nomination paper as compared in the same act of assembly (Election Code) with the provision that a candidate for township auditor is only required to pay a filing fee of $2, is unreasonable, arbitrary and has no proper relation to either the regulation or expenses of election; hence such is unconstitutional and against public policy.

As was said by the court in People ex rel. v. Board of Election Commissioners of City of Chicago, 221 Ill. 9, 21, 77 N. E. 321, 324, where the statute of that State required a candidate for governor or United States senator or representative in Congress to pay a filing fee of $100; for State senator, $50; for member of the House of Representatives, $25; for alderman, $25:

"These payments bear no relation to the services rendered in filing the papers or the expenses of the election. They are purely arbitrary exactions of money, to be paid into the public treasuries as a monetary consideration for being permitted to be a candidate. The payments are not intended as compensation for services rendered in filing the papers, but the provisions make the ability and inclination of a person to pay money a test of his qualification and of the right of the voters to choose him for public office. Every eligible person has a right to be a candidate for a public office without being subject to arbitrary or unreasonable burdens."

Our opinion is that this court should say, as a matter of law, that the legislature has abused its power in imposing the filing fee at $20 as required by the present statute (Pennsylvania Election Code) on a candidate for borough auditor in filing his nomination petition there-

for, that the action of the legislature is arbitrary and the fee has no relation to a reasonable regulation of election.

The arbitrary and discriminatory nature of this $20 filing fee is apparent in the following analysis:

The legislature by its schedule has given its view of reasonable fees covering the regulation of and expense in connection with nomination for various offices; and the arbitrary nature of the $20 filing fee for borough auditor is clearly in accentuated contrast with those provided for the other offices.

Only $50 is required for a candidate for the office of President of the United States, or for any public office to be filled by the electors of the State at large, which requires petitions signed by at least 100 registered and enrolled members of the proper parties in at least five counties of the State (section 912), and further requires printing on ballots or inserts for machines in every ward and precinct in the State.

Only $35 is required for the office of representative for Congress or of a judge of court of record, although this requires petitions by at least 200 members of the party and printing on ballots or inserts for machines in all wards and precincts in a judicial or congressional district.

Only $25 is required for senators or representatives in the General Assembly or for any office to be filled by the electors of an entire city or county, although this requires a petition of at least 100 registered and enrolled members of the proper party and printing of ballots or inserts for machines in an entire county or city or at least in a senatorial or legislative district.

Obviously $20 for a borough auditor is arbitrary, unreasonable, and discriminatory, since this, in contrast with the above, requires a petition of only ten registered and enrolled members of the party and the printing of

ballots or inserts for machines for only a borough which frequently means for only one precinct, as, for example, the Borough of Rose Valley, in this county.

The arbitrary nature of this fee is even more apparent by contrast with the fee of only $2 required for aldermen, justices of the peace, or constables, for which are required only the same number of names on a petition, to wit, ten, and for which there must be printed ballots or inserts for a machine in most cases to the same extent as for borough auditors.

Finally, for the office of township auditor, there is required a filing fee of only $1, one twentieth of that required for borough auditor, although the petition for township auditor requires just as many signatures—ten, and there is frequently required, in the case of a township auditor, printing of ballots or of inserts for machines sufficient to cover many precincts. The comparison of the Township of Upper Darby with its 10 precincts or wards with two to three and more voting districts in each ward, and its population of 65,000 people with the Borough of Rose Valley, constituting one precinct and with a population of only 320, presents this more clearly than any argument.

The relevance of the number of signatures required for a petition is clear from section 976 of the act which requires the board of elections to examine each petition and among other things count the signatures. The number of ballots or inserts for a machine required to be printed shows clearly the comparison of the remaining expense in connection with the nomination.

If the amount of the salary of the office for which nomination is sought is to be considered, it need only be said that filing fees of $35, less than twice the amount required by a borough auditor, in proportion to the salary of a judge of a court of record, 100 times the maximum that an auditor of the Borough of Swarthmore, or of any borough, is likely to receive in a year, the term of a judge

being almost twice as long. On the other hand, there can be no question that the justices of the peace, who need pay only $2, one tenth that required for borough auditors, frequently receive far more in fees during a year than do borough auditors.

Township auditors, paying only $1, or one twentieth that required for borough auditors, should in the main receive approximately the same amount as do borough auditors as each is paid under the law, $5 per day, and when work entailed in the audit for the Township of Upper Darby is compared with that necessitated in the Borough of Rose Valley, it is clear that the compensation must be nearly in inverse proportion to the amount of fee required of the borough auditors for nomination petitions.

Frankly, they are unreasonable from the number of signatures to be examined and the emoluments of the office of borough auditor, which the county solicitor from this viewpoint frankly admits.

It is apparent from an examination of the Election Code that the filing fee prescribed for borough auditors is arbitrary, unreasonable, and discriminatory, as compared with those of offices, nominations for which require much greater regulation and expense both as to examination of the petitions with many times the number of signatures and as to expense of printing vastly more ballots and inserts for machines, while offices for which nominations for which filing fees are one tenth or one twentieth of the $20 prescribed for borough auditors, require no less regulation and expense of printing and in many cases far more; on a comparison of compensation of the offices, the same discrimination is apparent.

Filing fees for nomination are new in Pennsylvania. In many States, laws prescribing filing fees were held unconstitutional and against public policy. On the other hand, the appellate courts of many States have permitted filing fees, if reasonable and not discriminatory. See Keane v. Lawrence, Secy. of Com., supra.

In the above case, the learned judge was passing only upon filing fees required for filing nomination petitions in the office of the Secretary of the Commonwealth, that is, the reasonableness thereof. He found they were not unreasonable considering the offices for which a nominee must pay a filing fee of $25, $35, and $50, such as candidates for President, judges, and senators or representatives in the General Assembly, or for any office to be filled by the electors of an entire city or county. Think of a fee of $25 for county controller, salary of $4,000 per year, who supplants the three auditors who formerly audited the fiscal affairs of the County of Delaware, as compared with $20 charged for a similar kind of employment at $5 per day for an auditor in a pocket borough. The comparison is ridiculous.

In the Keane case, Judge Hargest approved this conclusion where he stated:

"If the fees are so large as to show that they are arbitrary and unreasonable and have no proper relation to either the regulation or expense of elections, they might be said to be both unconstitutional and against public policy." He, moreover, quoted from the case of People ex rel. v. Board of Election Commissioners of City of Chicago, supra.

"The statute of that State required a candidate for governor or United States senator or representative in Congress to pay a filing fee of $100; for State senator, $50; for member of the House of Representatives, $25; for alderman, $25. The court said:

" 'These payments bear no relation to the services rendered in filing the papers or the expenses of the election. They are purely arbitrary exactions of money, to be paid into the public treasuries as a monetary consideration for being permitted to be a candidate. The payments are not intended as compensation for services rendered in filing the papers, but the provisions make the ability and in-

clination of a person to pay money a test of his qualification and of the right of the voters to choose him for public office.' "

As we have said, Judge Hargest followed the weight of opinion as exemplified by Socialist Party et al. v. Uhl et al., 155 Cal. 776, 103 Pac. 181, 187, where fees ranged from $50 for a State office to $10 for a county or municipal office, and held the filing fees of nomination petitions were constitutional and not against public policy if they were reasonable and bore a proper relation to the expense and regulation of election, and that the fees required of candidates filing petitions with the Secretary of the Commonwealth were not unreasonable or discriminatory. The same test as shown above clearly indicates that a filing fee of $20 for the office of borough auditor is unreasonable, arbitrary, and discriminatory both in reason and in comparison with all the other filing fees both greater and smaller as prescribed by the same act for other offices.

The courts may correct an abuse of the discretion vested in the legislature, and it would seem that the familiar doctrine as to reasonableness of license fees or charges, when they are not in the nature of taxes (and clearly the Pennsylvania Election Code is not a revenue raising measure) must apply: Haller Baking Co. v. Rochester Borough et al., 118 Pa. Superior Ct. 501; and if lawful occupations may not be oppressed under the guise of regulations, clearly, candidates for public office cannot be deterred or oppressed by arbitrary exactions having no relation to the expense of the regulation and machinery of election.

See opinion we have filed this day in Stockwell v. Delaware County, 33 D. & C. 280, wherein a number of pertinent cases are referred to and confirm our right to enter a judgment against the County of Delaware under the terms of the case stated herein.