400 A.2d 1249

Lynne M. ABRAHAM, Judge of the Municipal Court of . Philadelphia, Petitioner,

v.

Milton J. SHAPP, Governor of the Commonwealth of Pennsylvania, Barton A. Fields, Secretary of the Commonwealth of Pennsylvania, and Louis C. Mete, Commissioner of Bureau of Elections, Commissions and Legislations for the Commonwealth of Pennsylvania, Respondents,

and

The Honorable John A. MacPhail and the Honorable Richard DiSalle, Intervening Respondents,

Pennsylvania Bar Association, Amicus Curiae.

Supreme Court of Pennsylvania.

Argued Feb. 1, 1979.

Decided Feb. 8, 1979.

Opinion May 3, 1979.

574

Lynne M. Abraham, Philadelphia, pro se.

J. Justin Blewitt, Jr., Acting Atty. Gen., Allen C. Warshaw, Deputy Atty. Gen., for respondents.

David B. Fawcett, Jr., Pittsburgh, for Pa. Bar Association, amicus curiae.

Gregory M. Harvey, Philadelphia, for intervenors.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, NIX, MANDERINO and LARSEN, JJ.

## OPINION OF THE COURT

EAGEN, Chief Justice.

The substantive issue presented in this matter involves the constitutionality of Act No. 1978–257, § 1(b)(3), Pennsylvania Legislative Service (Purdon), 1978 No. 6, p. 866 [hereinafter: Act No. 1978–257, § 1(b)(3)], which provides that 42 Pa.C.S.A. § 3131 shall be amended to read:

"(b) Retention election after initial term by transfer or appointment.—Any of the following may file a declaration for candidacy for retention election with the Secretary of the Commonwealth on or before the first Monday of January of the year preceding the year in which his term of office expires:

\* \* \* \* \* \*

(3) A person appointed to the Commonwealth Court who:

> (i) shall have held office as an elected judge of a court of common pleas and shall not have been defeated for reelection or retention election;
>
> (ii) shall hold an appointive term on the Commonwealth Court which when added to his other service as a judge of a court of common pleas and/or the Philadelphia Municipal Court (whether or not continuously or on the same court and whether by election or appointment) shall aggregate at least ten years as of the date of expiration of such appointive term on the Commonwealth Court; and
>
> (iii) shall have been appointed to the Commonwealth Court pursuant to any executive order then in effect relating to the selection and screening of qualified nominees for appointment to the court."

More particularly, the issue may be framed as whether the Legislature may constitutionally authorize the filing for retention, rather than election,[1] by a person appointed to the Commonwealth Court[2] but never elected by the electors of the Commonwealth to that judicial position.

Our analysis begins with certain firmly established principles. "Every presumption is in favor of the constitutionality of legislative acts, Statutory Construction Act of 1972, 1 Pa.C.S. § 1922(3) (Supp.1977) . . . ." *In re William L.,* 477 Pa. 322, 329, 383 A.2d 1228, 1231 (1978); see also *Triumph Hosiery v. Commonwealth,* 469 Pa. 92, 364 A.2d 919 (1976). Also, "[c]ourts may not declare a statute unconstitutional 'unless it *clearly, palpably,* and *plainly* violates the Constitution.' " [Emphasis in original.] *Tosto v. Penn. Nurs. Home Loan Agcy.,* 460 Pa. 1, 16, 331 A.2d 198, 205

---

1. Retention and election processes are distinct processes. Retention as used herein refers to the process by which the electors determine whether a judicial officer shall remain in his position as set forth in Pa.Const. art. 5, § 15(b) (1968), or, more commonly, it refers to a "yes-no" determination. Election refers to the process by which the electors determine which person out of the number properly seeking the judicial position shall occupy it.

2. Our decision is expressly confined to the intervening respondents, and we express no view as to persons appointed who have already been retained, rather than elected.

(1975), quoting *Daly v. Hemphill*, 411 Pa. 263, 271, 191 A.2d 835, 840 (1963). But, instantly, despite the presumptions, we conclude the constitutional challenge brought by the petitioner must be sustained when the entire constitutional scheme is considered.[3]

▮ Art. 5, § 13(a) of the Pennsylvania Constitution of 1968 provides:

"Justices, *judges* and justices of the peace *shall be elected* at the municipal election next *preceding the commencement of their respective terms of office by the electors of the Commonwealth* or the respective districts in which they are to serve." [Emphasis added.]

Clearly, section 13(a) sets forth a general mandate[4] that judges are to be elected. Cf. *Berardocco v. Colden*, supra. Furthermore, the section mandates elections for statewide judgeships by the "electors of the Commonwealth." As to non-statewide judgeships, the section specifically requires an election "by the electors of . . . the respective districts in which they are to serve." The implication is clear, judges who are to serve statewide must be elected to do so by the electors who are to be served, namely, the electors of the Commonwealth. Compare Pa.Const. art. 5, § 15 (1874) (repealed) and *Commonwealth ex rel. McCormick v. Reeder*, 171 Pa. 505, 33 A. 67 (1895). Hence, Act No. 1978–257, § 1(b)(3), by allowing retention for a person never elected to a statewide judicial position by the electors of the Common-

3. In examining the Constitutional scheme, we must interpret it "in its popular sense as understood by the voters who adopted it, *Breslow v. Baldwin Township School District*, 408 Pa. 121, 182 A.2d 501 (1962); *Commonwealth ex rel. Reinhardt v. Randall*, 356 Pa. 302, 51 A.2d 751 (1947); *Brereton's Estate*, 355 Pa. 45, 48 A.2d 868 (1946). Moreover, related provisions of the Constitution must be read in connection with one another so as properly to ascertain their meaning, *Weiss v. Ziegler*, 327 Pa. 100, 193 A. 642 (1937)." *Berardocco v. Colden*, 469 Pa. 452, 458–59, 366 A.2d 574, 577 (1976). See also *Firing v. Kephart*, 466 Pa. 560, 353 A.2d 833 (1976).

4. The term "shall" has generally been interpreted as being mandatory. See *Fishkin v. Hi-Acres, Inc.*, 462 Pa. 309, 341 A.2d 95 (1975); *Amal. Trans. U. Div. 85 v. Port. A. of Alleg.*, 417 Pa. 299, 208 A.2d 271 (1965).

wealth clearly, palpably, and plainly conflicts with section 13(a)'s mandate.[5] Accordingly, only if such a retention is authorized by another section of the Constitution may Act 1978–257, § 1(b)(3) be held constitutional.

■ Pa.Const. art. 5, § 15(b) (1968), in relevant part, provides:

"A justice or judge elected under section thirteen (a) . . or retained under this section fifteen (b) may file a declaration of candidacy for retention election with the officer of the Commonwealth who under law shall have supervision over elections on or before the first Monday of January of the year preceding the year in which *his* term of office expires." [Emphasis added.]

Section 15(b) specifically exempts certain persons from the general mandate of section 13(a) and permits those specific persons to file for retention election. As here relevant, those persons must have been elected a justice or judge under section 13(a). But section 15(b)'s exemption and authorization is limited in its application not only to elected persons, its application is further limited to persons elected to the judicial position in which they seek to be retained. The section authorizes a filing for retention on a certain date of the year preceding the year "in which *his* [that person's] term of office expires." [Emphasis added.] If the time requirement for filing for retention is determined by expiration of "his term," then section 15(b) impliedly authorizes retention only for an elected person seeking to be retained in "his . . . office."

"[H]is term of office" or "his . . . office" does not include a term of office or office to which a person has been appointed. Just as section 15(b) refers in the possessive to a term of office, i. e. "his term of office," so too section 13(a),

---

5. *Leedom v. Thomas*, 473 Pa. 193, 373 A.2d 1329 (1977), and *Berardocco v. Colden, supra,* unquestionably indicate that section 13(a) is the starting point for an analysis of issues such as presented here and, also, that the election process is favored over the appointment process. Our textual analysis merely shows that the election process is favored and that that process must involve the electors to be served.

mandating elections, refers to the term of office to which persons may seek election in the possessive, i. e. "their." The implication is clear, the term of office and office are possessed by a person if and only if he is elected to it and retention is authorized only if the term of office or office is possessed.

Further support can be found for this view in sections 13(b) and (c). Section 13(b), providing for appointments by the Governor to fill judicial vacancies, refers to the period of appointment as an "initial term," not as the *appointee's* initial term or *his* initial term. So too, section 13(c) refers to a term of office to which a person is appointed under section 13(b) as an "appointive term" in contrast to use of the possessive in referring to the term in sections 13(a) and 15(b).

Previous rulings of this Court and a close study of section 13(c) further demonstrate the correctness of what we have hereinbefore stated.

■ In *Berardocco v. Colden*, supra 469 Pa. at 459, 366 A.2d at 577, and in *Barbieri v. Shapp*, 476 Pa. 513, 383 A.2d 218 (1978), we said the appointment process was intended to deal with specific situations and implied the electoral process was favored in the Constitution as written. We now note that section 15(b), exempting certain persons from the general mandate of section 13(a), constitutes an exception to mandated elections. The election process, as favored, takes precedence over the retention process, as well as the appointive process. Certainly, the election process would be thwarted if statewide offices could be filled without an election "by the electors of the Commonwealth." Pa.Const. art. 5, § 13(a) (1968).

Pa.Const. art. 5, § 13(c) provides:

"The provisions of section thirteen (b) [authorizing appointments] shall not apply either in the case of a vacancy to be filled by retention election as provided in section fifteen (b), or in the case of a vacancy created by failure of a justice or judge to file a declaration for retention

election as provided in section fifteen (b). In the case of a vacancy occurring at the expiration of an appointive term under section thirteen (b), the vacancy shall be filled by election as provided in section thirteen (a)."

The words "in the case of" in each instance are used to introduce specific situations, namely where a vacancy will occur to be filled by retention, where a retention declaration is not filed, and where a vacancy occurs at the expiration of an appointed term. It is important to note in the third situation that section 13(c) does not say: in the case of a vacancy which *might* occur or in case of a vacancy occurring *"by failure"* of a judge to qualify for retention under fifteen (b) as is present in the second situation; it says in case of a vacancy occurring. [Emphasis added.] The vacancy occurs because, following an appointive term, retention is unavailable and a vacancy will exist. Furthermore, section 13(c) specifically mandates an election under section 13(a) for such a vacancy.

We note other considerations.

First, Act No. 1978–257, § 1(b)(3) requires over nine years of judicial service before continuation in the judicial post may be sought by the retention process; yet, were we to rule this is constitutional, there would be no constitutional impediment to additional legislation reducing the judicial service to a less period of time. We are not persuaded the framers of the Constitution intended this or anything equivalent thereto.

Second, were we to uphold the Act, we would create an incongruous result. Upholding the Act would allow an appointee to the Commonwealth Court to avoid a statewide election entirely. If we were to say this is constitutional, then we must necessarily interpret the constitutional scheme as indicating appointment and retention to the Commonwealth Court following election to a court of common pleas are favored over elections. But see *Berardocco v. Colden,* supra; *Barbieri v. Shapp,* supra. Yet, if a person elected statewide declines to file for retention to an appellate court, an appointment is prohibited, section 13(c), and an election is

mandated, section 15(b). Hence, upholding the Act would grant retention a favored status to appointees to appellate courts in certain circumstances; while, by its express terms, the constitution would preclude appointment and retention in other circumstances. We do not believe this was intended by the framers of the Constitution.

We have conscientiously studied the arguments advanced in favor of upholding the constitutionality of Act No. 1978–257, § 1(b)(3) and find nothing persuasive. We shall refer to one.

It is argued that retention is an election process and satisfies section 13(a)'s mandate. Unlike the term "election," retention is specifically defined in the Constitution. Pa.Const. art. 5, § 15(b). Furthermore, section 13(c) and 15(b) mandate and allow the election and retention processes under specifically defined circumstances. Such specific delineation would hardly be necessary were it intended to equate the processes.

Also in the context of a discussion of the election process to fill a public office, we have indicated the right of the elector to select between persons is necessary. *Wassen v. Woods*, 265 Pa. 442, 446, 109 A. 214 (1919); *Winston v. Moore*, 244 Pa. 447, 91 A. 520 (1914). Since retention precludes this, it cannot in the context of determining who shall fill a public office be equated with an election.

■ One further issue needs discussion, namely the timeliness of the filing of the petition or challenge to the declarations for candidacy for retention. It is urged that declaratory relief pursuant to the Act of June 18, 1923, P.L. 840, §§ 1–16, *as amended*, 12 P.S. §§ 831–846 (Supp.1978–79), should be denied because the Election Code, Act of June 3, 1937, P.L. 1333, art. I, §§ 1 *et seq., as amended*, 25 P.S. §§ 2600 *et seq.* (Supp.1978–79) [Hereinafter: 25 P.S. § ——], provides the exclusive procedure for objecting to the retention papers filed by intervening respondents. The argument is specifically based on 25 P.S. § 2937 (Supp.1978–79), which, in relevant part, provides:

"All nomination petitions and papers received and filed within the periods limited by this act shall be deemed to be valid, unless, within seven days after the last day for filing said nomination petition or paper, a petition is presented . . . ."

Since the instant petition was filed two days after the time allowed by 25 P.S. § 2937 (Supp.1978–79), it is said to be untimely. We do not agree.

25 P.S. § 2937 requires objection to "papers . . . filed within the periods limited by this act," i. e. the Election Code. This is not such a case. The time limit for the filing of the retention papers here involved is fixed by Pa.Const. art. 5, § 15(b) and 42 Pa.C.S.A. § 3153, not the Election Code.

We entertain the petition seeking declaratory relief for the same reasons as in *Barbieri v. Shapp*, 470 Pa. 463, 368 A.2d 721 (1977), but we do not imply the Election Code, 25 P.S. §§ 1 *et seq.*, was not intended to govern the retention process in other circumstances. Our present decision is limited to the facts here present.

Accordingly, we heretofore entered the following:

AND NOW, TO WIT, this 8th day of February, 1979, upon consideration of the petition for review filed in the above captioned matter over which jurisdiction was accepted January 19, 1979, Act No. 1978–257, § 1(b)(3), Pennsylvania Legislative Service (Purdon), 1978 No. 6, p. 866, is declared unconstitutional insofar as it authorizes a person to file for retention election to the Commonwealth Court following appointment pursuant to executive order. The declarations for candidacy for retention election filed by intervening respondents are declared void.

The judges for the respective terms of office should be determined in an election by the electors of the Commonwealth pursuant to Pa.Const. art. 5, § 13(a); the Act of June 3, 1937, P.L. 1333, art. I, §§ 101 *et seq.*, 25 P.S. §§ 2601 *et seq., as amended* (1938) (known as the Pennsylvania Election Code); and, 42 Pa.C.S.A. § 3131(c) (1978), and the Secretary of the Commonwealth should designate the respective of-

fices involved herein as offices for which candidates are to be nominated pursuant to the Act of June 3, 1937, P.L. 1333, art. IX, § 905, 25 P.S. § 2865, *as amended* (Supp.1978–79).

NIX, J., filed a dissenting opinion.

MANDERINO, J., filed a dissenting opinion.

NIX, Justice, dissenting.

Under the scheme of retention elections, the timely filing of the declarations for candidacy for retention not only triggers the right of the judge to have his name placed upon the ballot in the general election, but it also removes that office as an office to be filled by the regular election process. Of particular significance to the present inquiry, the filing of a valid declaration forecloses the right to seek the position by filing nominations petitions or papers to other aspirants for the office. Conversely, if a valid declaration for candidacy is not timely filed, 42 Pa.C.S.A. § 3131(b), the office must then be filled in accordance with the provisions of the Election Code, Act of June 31, 1937, P.L. 1333, art. I, §§ 1 *et seq., as amended*, 25 P.S. §§ 2600 *et seq.* (Supp.1978–79). Each step of the election process, including the opportunity to object, is carefully constrained by mandatory time requirements under the Election Code. Although the Judicial Code, 42 Pa.C.S.A. § 101 et seq. provides the time in which the declaration of candidacy for retention election must be filed with the Secretary of the Commonwealth, 42 Pa.C.S.A. § 3131(b), it does not expressly provide for either a procedure whereby the validity of the declaration can be challenged or the time limits within which the objections may be made.[1]

---

1. The majority's assertion that the "time limit for the filing of the retention papers here involved is fixed by [the] Pa.Const. art. 5 § 15(b) and 42 Pa.C.S.A. § 3153", page 1253, is illustrative of their confusion of the issues presented in this appeal. As I understand the argument advanced by respondents, they do not suggest that art. 5 § 15(b) authorizes a retention election in this instance, but rather it is asserted that art. 5 does not preclude the legislature from providing for a retention election to fill the offices in question. If the legislature does have the right as urged by respondents, it is problematical

We have long recognized that equity should have no jurisdiction in election matters and that it is the responsibility of the legislature by appropriate legislation to provide the procedures for elections to public office. *Thompson v. Morrison*, 352 Pa. 616, 44 A.2d 55 (1945); *Wilson v. Phila.*, 319 Pa. 47, 179 A. 553 (1935); *Winston v. Moore*, 244 Pa. 447, 91 A. 520 (1914); *Patterson v. Barlow*, 60 Pa. 54 (1869). This Court has also recognized that the legislature intended that the Election Code should provide a complete and adequate remedy for any complaints in the election process. *Thompson v. Morrison, supra.* Although the legislature intended to provide an alternative procedure for the selection of public officers by its enactment of § 3131(b), it did not intend that appropriate provisions of the Election Code should be ignored.

Petitioner in the instant matter sought to raise her objections by requesting declaratory relief pursuant to the Act of June 18, 1923, P.L. 840, §§ 1–16, *as amended*, 12 P.S. §§ 831–846. I believe that her contentions should have been raised pursuant to § 2937 of the Election Code. I am persuaded to adopt this view not only because I believe the Election Code where applicable *was intended to* control the retention process, but also because declaratory judgment is not an optional substitute for established and available remedies. *State Farm Mut. Auto Insur. Co. v. Semple*, 407 Pa. 572, 180 A.2d 925 (1962).

It is argued that this is not an attack on the papers filed by respondent Judges but rather an attempt by the petitioner to assert her right to run for the office. This is a classic illustration of a distinction without a difference. Petitioner has no right to seek the office if there has been a valid filing

whether it must meet the time schedule provided in section 15. What is controlling is that the statute purporting to confer this authority (§ 3131) expressly provides the time in which the declaration must be filed.

Moreover, § 3153 is clearly inapplicable. This section pertains to judges who have served a regular term, either as a result of election or retention. Thus, § 3153 obviously does not apply to instant respondent judges who have merely served an appointive term and are seeking full term.

of the declaration of retention. Section 2937 is not limited to formal defects, substantive objections may also be considered. Thus the fact that petitioner's contentions are directed to respondent Judges' rights to seek this method of election would be cognizable under an objection filed pursuant to § 2937. The majority while not disputing that the legislature intended the Election Code to govern "the retention process in other circumstances"[2] attempts to justify the consideration of the merits for the reason set forth in *Barbieri v. Shapp*, 470 Pa. 463, 368 A.2d 721 (1977).[3] The situation confronted in *Barbieri v. Shapp, supra*, is inapposite to the present inquiry. In *Barbieri v. Shapp, supra*, we were faced with the relatively unique situation where an incumbent judge was unable to ascertain when his declaration of candidacy for retention pursuant to Article V, Section 15(b) of the Pennsylvania Constitution should be filed. Because of the transition between the terms of office under the Constitution prior to the 1968 Amendment and after, there was an apparent conflict between the 10-year term limit and the provision for election of judges only during municipal elections to be held in odd-numbered years. Clearly in that case, there was no adequate procedure under the Election Code to resolve this controversy and declaratory judgment was properly entertained. In contrast, under the present facts the respondent Judges have filed their declarations of retention pursuant to the authority of § 3131. If an aspirant for the offices wishes to assert the invalidity of those declarations for either formal or substantive reasons, § 2937 provides the procedure for raising those complaints. Frequently, disputes under § 2937 are between rival candidates for the office in question. The fact that petitioner's right to become a candidate for the office is conditioned upon the success of her challenge is for this purpose of no legal significance. The crucial difference between this ac-

2. See page 1253.

3. In this case, this writer filed a concurring opinion employing a different analysis than that expressed in the Opinion for the Court. *Barbieri v. Shapp*, 470 Pa. 463, 470, 368 A.2d 721, 725 (1977) (Nix, J., concurring).

tion and the situation presented in *Barbieri v. Shapp, supra,* is that in the latter appeal there was a legitimate uncertainty as to when the controversy would be justiciable. No such uncertainty exists here. Thus, I cannot conclude that the reasons which moved this Court to provide declaratory relief in *Barbieri v. Shapp, supra,* justify our consideration of the merits of the instant appeal.

Finally, while I would not have an objection to construe petitioner's request for declaratory relief as an objection pursuant to § 2937, I cannot ignore the time constraints in which such an objection must be raised. Under this section, the objection must be raised within seven days of the filing of the objectionable paper. We have long recognized the need to narrow time constraints in election matters. In the election procedure, time is of the essence in the resolving of disputes. *See, e. g., In re Moore Nomination Petition,* 447 Pa. 526, 291 A.2d 531 (1972); *Socialist Labor Case,* 332 Pa. 78, 1 A.2d 831 (1938).

It is, therefore, my view that this complaint was raised untimely and we should not reach the merits. I, therefore, must register my dissent to the decision of the majority who have concluded otherwise.

MANDERINO, Justice, dissenting.

The majority correctly notes that the presumption is in favor of the constitutionality of a legislative act and that this Court may not strike down a statute unless it " 'clearly, palpably and plainly violates the Constitution.' " Yet the majority voids respondents' declaration for candidacy for retention election. This ruling is incorrect because petitioner has not sustained the burden of establishing that the statute is invalid. *Tranter v. Allegheny Co. Authority,* 316 Pa. 65, 75, 173 A. 289, 294 (1934), *Sharpless v. Mayor,* 21 Pa. 147, 164 (1853). I, therefore, must dissent.

In the past this Court has recognized the broad power of the General Assembly to control elections, particularly judicial elections. In *McCormick v. Reeder,* 171 Pa. 505, 33 A. 67 (1895) a procedure for electing judges to the Superior Court

was challenged and this Court upheld as constitutional the procedure which permitted each voter to cast a ballot for only *six* candidates when *seven* judges were to be elected. In *Winston v. Moore,* 244 Pa. 447, 91 A. 520 (1914), this Court upheld as constitutional a legislative act which provided that a judicial primary candidate who received a number of votes greater than half of the number of ballots cast in that primary election would be the *sole nominee* on the November ballot. Likewise, in *Wasson v. Woods,* 265 Pa. 496, 109 A. 214 (1919) this Court again upheld the *sole nominee* provision as constitutional. In *Wasson, supra,* the five candidates receiving the highest number of votes in the primary for the five vacant judgeships on the Court of Common Pleas of Allegheny County were placed as the *sole nominees* in the November ballot.

Finally, in *Thiemann v. Allen* (J–123 and J–124, filed April ——, 1979) this same Court *upheld* the constitutionality of 42 Pa. C.S.A. § 3133 (1918) which provides for each party to nominate only *two* candidates in the primary election and each voter to cast a ballot for only *two* candidates in the general election even though a total of *three* judges are to be elected to the Commonwealth Court.

The legislative enactment which we review today does not "clearly, plainly and palpably" violate the Constitution any more than the statute in the aforementioned cases. The majority opinion concludes without justification that "[E]lection refers to the process by which electors determine which person out of the number properly seeking the judicial position shall occupy it." (At p. 1250 n. 1). Yet, in all of the aforementioned cases this Court has held that the legislature could validly provide for various types of elections in some of which there was no process by which electors chose some persons out of a greater number of persons appearing on the ballot. Likewise, Act No. 1978–257, § 1(b)(3) amending 42 Pa. C.S.A. § 3131 merely provides another type of election in which the electors have the final say.

Act No. 1978–257, § 1(b)(3) authorizes the filing for retention *election* by a person appointed to the Commonwealth Court who:

"(i) shall have held office as an elected judge of a court of common pleas and shall not have been defeated for reelection or retention election;

"(ii) shall hold an appointive term on the Commonwealth Court which when added to his other service as a judge of a court of common pleas and/or the Philadelphia Municipal Court (whether or not continuously or on the same court and whether by election or appointment) shall aggregate at least ten years as of the date of expiration of such appointive term on the Commonwealth Court; and

"(iii) shall have been appointed to the Commonwealth Court pursuant to any executive order then in effect relating to the selection and screening of qualified nominees for appointment to the court."

The majority states that this *clearly, palpably,* and *plainly* conflicts with the Constitution because it permits a person never elected to a statewide judicial position to be "elected" through a retention process. I agree that this is exactly what Act. No. 1978–257 accomplishes; however, I can find no constitutional violation.

The majority rewrites art. 5, § 15(b) of the Pennsylvania Constitution and reads *into* it requirements that are clearly not there.

"A justice or judge elected under section thirteen (a) . . or retained under this section fifteen (b) may file a declaration of candidacy for retention election with the officer of the Commonwealth who under law shall have supervision over elections on or before the first Monday of January of the year preceding the year in which his term of office expires."

The majority's reading is not required, necessary or, indeed, desirable. First, the majority refuses to recognize the retention process itself as an election process. That ignores the language of the Constitution which refers to a retention *election.* Obviously, the voter does express a definite choice when he or she casts a "yes" or "no" ballot. The voter, when he or she casts such a ballot does, in a very real sense, determines "who shall fill a public office." (At p. 1253).

Secondly, the language of Section 15(b) is unambiguous and there is no need to resort to a strained interpretation. Nonetheless, the majority relies upon "implications" and finds that, despite the language of the constitution, being elected to a judicial office under Section 13(a) is not enough, rather one must have been elected in a contested election *to the judicial position which he or she now seeks.* The majority reasons that since Section 15(b) uses a possessive phrase— "his term of office" then one must possess the office before he or she can be retained in the office. (P. 1252). The majority takes the point one step further and holds that one can possess an office *only* if elected to that same office. Now, I must disagree. One appointed to office possesses that office as fully and completely for the term of his or her appointment as does one who is elected. One who is appointed to judicial office possesses a "term of office" in the specific language of the Constitution as much as one who is elected. Section 13(b) states:

> "*The person so appointed shall serve for an initial term* ending on the first Monday of January following the next municipal election more than ten months after the vacancy occurs."

The powers of an appointed judge are the same as an elected judge. The appointed judge does possess that office and I fail to see any rationale for distinguishing that possession from that of an elected judge. The majority's rationale in this area is not only confusing but it fails woefully short of the type of proof necessary before striking down the presumption of constitutionality.

Thirdly, respondents have already been elected in one contested judicial election under section 13(a) and therefore, respondents do qualify under the Constitutional definition of who may file a declaration of candidacy for retention. Art. 5 § 15(b). Respondent, DiSalle, was elected under Section 13(a) to the Court of Common Pleas of Washington County and was serving this term when appointed to the Commonwealth Court. Although respondent, MacPhail was a retired judge when he received his appointment to the Common-

wealth Court, he too had previously been elected under Section 13(a) to the Court of Common Pleas of Adams County. The reasonable interpretation of the retention election section is that one contested election is all that is required in the career of a judge. There is no reference to the fact that one must be elected to a *statewide* judicial position in order to be so retained. This Court cannot impose such a requirement of its own accord and then find that Act No. 1978–257 "clearly, palpably and plainly" violates such a judicially created requirement. Voters, statewide, do have recourse in the "yes"-"no" retention election, and have a very real, meaningful basis for their vote since the retention candidate is not an unknown quantity *as a judge,* regardless of whether the judgeship was statewide or not. Respondents fit all the criteria constitutionally required for a retention election and this Court should not invalidate their candidacy for such.

Finally, the legislative enactment before us today is entirely consistent with the prior enactments by the General Assembly concerning the Commonwealth Court.

Act No. 1978–257 is therefore constitutional and respondents should be permitted to file for retention election.